IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CHARLES "CHUCK" JAMES, )
)
      Plaintiff, )
)
v. ) Case No. 06-CV-52-JHP
)
CLYDE E. PATTON, JUDITH )
PATTON, and MDK, INC., )
)
      Defendants. )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.    Findings of Fact**

    **A.    Parties**

    1.    MDK, Inc. is an Oklahoma corporation with its principal place of business in Oklahoma. (Agreed Pretrial Order at 3.) MDK maintains mining equipment and mining sites.

    2.    Clyde Patton is the majority stockholder, director, and current president of MDK. He is a citizen of Oklahoma. (Agreed Pretrial Order at 3.)

    3.    Judith Patton is the current secretary/treasurer of MDK and the mother of Clyde Patton. She is a citizen of Oklahoma. (Agreed Pretrial Order at 3.)

    4.    Charles "Chuck" James is the minority stockholder and former director and vice-president of MDK. He is a citizen of Texas. (Agreed Pretrial Order at 3.)

    **B.    Purchase of MDK**

    1.    On October 26, 2004, Chuck James and Clyde Patton together entered into an agreement to purchase all 500 outstanding shares of MDK stock from Darren Couch, the sole

shareholder, for $75,000. (Defs.' Tr. Ex. 1.) Clyde Patton received 255 shares of MDK stock, while Chuck James received the remaining 245 shares. (Defs.' Tr. Ex. 1.) Clyde Patton and Chuck James agreed to employ Darren Couch for at least six months, at $2,000 per month. (Defs.' Tr. Ex. 1.)

2. Chuck James contributed $40,000, $10,000 of which he borrowed from Amoco Federal Credit Union directly and $30,000 his father, Dow James, borrowed from Amoco Federal Credit Union and loaned to Chuck James. (Pl.'s Tr. Ex. 3; Tr. Trans. at 23.) Clyde Patton contributed $62,500 in the form of equity in real property owned by his father, Ed Patton. $20,000 of Chuck James' funds were paid directly to Ed Patton to equalize the contributions of Chuck James and Clyde Patton. (Tr. Trans. at 25, 28, 185, 247.)

3. On October 26, 2004, during a meeting of MDK's shareholders, Clyde Patton was elected President and Director of MDK, Chuck James was elected Vice-President and Director, and Judith Patton was elected Secretary-Treasurer. (Agreed Pretrial Order at 3; Pl.'s Tr. Ex. 4.) Neither Clyde Patton nor Chuck James received any compensation in their roles as officers and directors of MDK. (Tr. Trans. at 279-280.)

4. In spite of the disparity in ownership, Clyde Patton and Chuck James agreed that all profits of MDK would be divided equally between them. (Agreed Pretrial Order at 3.) They further agreed that they would use these funds to repay their respective debts incurred in purchasing MDK. (Tr. Trans. at 185.) Finally, although Clyde Patton and Chuck James agreed to draw an hourly wage for work performed as employees of MDK, neither was guaranteed work with MDK. (Tr. Trans. at 24-25, 34.)

5. Clyde Patton has not repaid Ed Patton for money Ed Patton loaned him to

purchase MDK. (Tr. Trans. 214.)

        **C.**        **Theft of Unimin Equipment**

        1.        Unimin is a corporation that mines and processes silica sand for use in various commercial applications. (Tr. Trans. at 240.)

        2.        Prior to its purchase by Chuck James and Clyde Patton, MDK had been almost continuously employed by Unimin to work at its various job sites for the previous nine years. (Tr. Trans. at 242, 311, 319-320.)

        3.        In late 2004, Mike James, the brother of Chuck James, removed a welder, welding hood, and other equipment from a Unimin job site in Minnesota. (Tr. Trans. at 39-43, 106.)

        4.        Chuck James first learned that his brother had taken the Unimin equipment when he saw the welder in the back of his brother's truck. (Tr. Trans. at 39-43, 106.)

        5.        Although Chuck James did not personally remove the Unimin equipment from the Minnesota job site, he initially informed Clyde, Judith, and Ed Patton that he had taken the equipment and that the equipment was in his possession. (Tr. Trans. at 41-43, 276.)

        6.        Chuck James kept the Unimin equipment at his home in Texas City, Texas, for almost one month before bringing it to Sallisaw, Oklahoma and turning it over to Clyde Patton. (Tr. Trans. at 39, 107, 276.)

        **D.**        **Chuck James' Removal and Termination**

        1.        In a letter dated January 1, 2005, Clyde Patton informed Unimin that he had fired Chuck James. (Pl.'s Tr. Ex. 40.)

        2.        In a letter dated January 14, 2005, Clyde and Judith Patton notified Chuck James of a special meeting of the directors of MDK to be held on January 18, 2005, in which Chuck

James was to be removed as a director of MDK. (Pl.'s Tr. Ex. 7.) James received the notice prior to the meeting, but did not request a continuance or otherwise object to the meeting. (Tr. Trans. at 45.)

    3.    At the meeting held on January 18, 2005, Chuck James was removed as a director and officer of MDK based upon his alleged theft of Unimin equipment. (Pl.'s Tr. Ex. 7.) Chuck James did not attend the meeting. (Tr. Trans. at 100-101.)

    4.    The bylaws of MDK provide for the removal of a director at a meeting of shareholders to be held after 10 days written notice and for the removal of an officer by the Board of Directors. (Pl.'s Tr. Ex. 6.)

    5.    On April 27, 2006, MDK notified Chuck James of a special shareholder meeting to be held on May 8, 2006, to ratify the previous actions of the Board of Directors on January 18, 2006, in removing Chuck James as an officer of MDK. (Defs.' Tr. Ex. 15.) Chuck James did not attend the May 8, 2006, special shareholder meeting. (Tr. Trans. at 100.)

    **E.**    **Subsequent Management of MDK**

    1.    Following the removal and termination of Chuck James, Judith Patton reclassified as "office rent" three payments to herself and Ed Patton originally improperly classified as "loan payments" in MDK's records. (Pl.'s Tr. Ex. 22, 31; Tr. Trans. at 142-149, 186-187.) In addition, Judith Patton reclassified as "shareholder distributions" three payments to Chuck James originally improperly classified as "loan payments." ( Tr. Trans. at 147, 170-171.)

    2.    Also following the removal and termination of Chuck James, both Clyde and Judith Patton used or loaned MDK funds for non-corporate purposes: Clyde Patton used $7,891 to purchase a motorcycle; Clyde Patton used $18,843.39 to pay the medical expenses of his

fiancé, Amber Denison; Judith Patton used $49 to pay for the services received at a beauty shop; MDK loaned $3,700, without a note or interest, to Mimi Davis, a friend of Judith Patton; MDK loaned $3,728.73, without a note or interest, to Ed Patton. (Pl.'s Tr. Ex. 17, 18, 33, 34, 35, 37, 38; Tr. Trans. at 152-158, 191-193, 201-203.)

3. All of the corporate funds used by Clyde and Judith Patton, as well as the loan to Mimi Davis, have been repaid to MDK, without interest. (Pl.'s Tr. Ex. 17, 18, 33, 34; Tr. Trans. 117-118, 122-129, 152-154, 156-157, 191.)

4. In addition, between July, 2005, and December, 2006, MDK incurred approximately 30,053.57 in legal expenses, some portion of which were incurred in defending Chuck James' claims against Clyde and Judith Patton. (Pl.'s Tr. Ex. 18, 38; Tr. Trans. 158-159.)

## II. Conclusions of Law

### A. Chuck James' Claim for Breach of Written Contract

1. Under Oklahoma law, the essential elements of any contract are (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient cause or consideration. Okla. Stat. tit. 15, § 2.

2. To prevail on a breach of contract claim, a party must prove (1) that a contract was formed between the parties, (2) that the other party breached the contract in a certain way, and (3) that the party bringing the action suffered damages as a direct result of the other party's breach. *Young v. Thomas*, 930 P.2d 836, 839 (Okla. App. 1996).

3. Under Oklahoma law, "each contract carries an implicit and mutual covenant by the parties to act toward each other in good faith." *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027, 1029 (Okla. 1985). Accordingly, "neither party [may] do anything which will destroy or

5

injure [the] other party's right to receive [the] fruits of [the] contract." *Wright v. Fidelity & Deposit Co. of Md.*, 54 P.2d 1084, 1087 (Okla. 1935) (quotation omitted).

4. Chuck James has failed to prove that Clyde Patton's conduct destroyed or injured his rights to receive the fruits of their written contract with Darren Couch. To the contrary, Chuck James received 245 shares of MDK stock, exactly as called for by the written contract with Darren Couch.

### B. Chuck James' Claim for Breach of Implied Contract

1. A contract may be either express or implied. Okla. Stat. tit. 15, § 131. "Implied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract. The distinction between implied and express contracts rests in the mode of proof, but both are founded upon the mutual agreement of the parties." *Jones v. University of Cent. Oklahoma*, 910 P.2d 987, 989 (Okla. 1995).

2. "The party who alleges [the existence of] a contract, either as a cause of action or a defense, has the burden of proving it, if the existence of the contract is put in issue; and he has the burden of proving every fact essential to the cause of action or defense." *National Surety Co. v. Board of Ed. of City of Hugo*, 129 P. 25, 26 (Okla. 1912).

3. "To be enforceable, a contract must be supported by valid consideration." *Intercon Mfg. v. Centrifugal Casting Mach. Co., Inc.*, 875 P.2d 1149, 1152 (Okla. App. 1993). To have valid consideration, there must be some "benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of

6

consent lawfully bound to suffer, as an inducement to the promisor." Okla. Stat. tit. 15, § 106.

4. Chuck James has failed to prove that an implied contract existed between himself and MDK by which MDK was obligated to repay Chuck James' indebtedness to his father. First, Chuck James has not proven the existence of an agreement between himself and MDK regarding the repayment of Chuck James' indebtedness to his father. Second, any purported agreement between Chuck James and MDK fails for lack of consideration, as the funds that Chuck James contributed toward the purchase of MDK were consideration for Chuck James' and Clyde Patton's contract with Darren Couch, not for a separate contract with MDK to repay the very funds that Chuck James used to purchase the company.

### C. Chuck James' Claim for Breach of Oral Contract

1. Under Oklahoma law, any contract may be oral unless required by statute to be in writing. Okla. Stat. tit. 15, § 134.

2. Chuck James has failed to prove that Clyde Patton breached any oral agreements between them by failing to divide the profits of MDK equally following Chuck James' departure from MDK. Chuck James has failed to prove that MDK made a profit during this period. Indeed, Chuck James conceded in closing arguments that "there is no evidence of profits having been made by [MDK]." (Pl.'s Reply. Defs.' Resp. Pl.'s Closing Argument.) Instead, the evidence presented indicates that since 2006, MDK has not made a profit. (Pl.'s Tr. Ex. 35, 36, 37, 38.) As Chuck James has not proven the existence or amount of any profits that should have been divided, or that such profits were divided unequally, he cannot establish either that Clyde Patton breached their oral agreement to divide profits equally nor the amount of damage suffered as a result of the alleged breach.

3. Chuck James has failed to prove that Clyde Patton breached any oral agreements between them by removing Chuck James as director and officer of MDK. Although the parties agreed to serve as a directors and officers of MDK, Chuck James has not proven the existence of any contract whose terms preclude the removal of either Chuck James or Clyde Patton from these positions, with or without cause.

4. Chuck James has failed to prove that Clyde Patton breached any oral agreements between them by terminating Chuck James as an employee of MDK. Although following their purchase of MDK, Chuck James and Clyde Patton both "continued to work on behalf of [MDK]...[a]s the same type of employees that [they] were prior to the[ir] purchase [of MDK]" (Tr. Trans. at 26), and had agreed to "draw an hourly wage" (Tr. Trans. at 24-25), Chuck James concedes that neither he nor Clyde Patton were guaranteed work, but instead were merely paid for work performed (Tr. Trans. at 34). Thus, Chuck James failed to establish the existence of an oral contract between himself and Clyde Patton that both would work as employees of MDK, much less that neither could be terminated.

5. Chuck James has failed to prove that Clyde Patton breached any oral agreements between them by failing to pay Chuck James' indebtedness to his father. As noted above, Chuck James and Clyde Patton agreed that each of them would repay his individual indebtedness to his father from his share of the profits of MDK. Chuck James did not allege or prove that Clyde Patton, either individually or in his capacity as director, officer, or employee of MDK, entered into an agreement obligating him to repay Chuck James' indebtedness to his father.

**D. Chuck James' Claim for Fraud**

1. To establish a claim for fraud, the plaintiff must prove that (1) the defendant made

8

a material representation, (2) the representation was false, (3) the defendant either knew the representation was false or made it recklessly, without regard to its truth, (4) the defendant made the representation with the intention that the plaintiff act upon it, and (5) the plaintiff suffered injury as a result. *Roberson v. PaineWebber*, 998 P.2d 193, 197 (Okla. App. 1999); *see also Dawson v. Tindell*, 733 P.2d 407, 408 (Okla. 1987). Each of the elements of fraud must be proven by clear and convincing evidence. *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 177.

    2.    Chuck James failed to prove each of the elements of his fraud claim against Clyde and Judith Patton by clear and convincing evidence. Chuck James presented no evidence that either Clyde or Judith Patton made any misrepresentations concerning their use of corporate funds or Chuck James' involvement with his new company, or that Chuck James relied upon any alleged misrepresentations to his detriment.

    **E.**    <u>**Chuck James' Claim for Misappropriation of Corporate Funds**</u>

    1.    As a general rule, "officers and directors in control of a corporation occupy toward the corporation and its stockholders, in respect to the business or property of the corporation, a fiduciary relation somewhat in the nature of a trusteeship and cannot deal with the property of the corporation for their own personal benefit or advantage." *Adams v. Mid-West Chevrolet Corp.*, 179 P.2d 147, 156 (Okla. 1946).

    2.    Nevertheless, "the remedial rights of minority stockholders with respect to wrongs committed against the corporation by the directors [or officers] in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." *Dobry v. Yukon Elec. Co.*, 290 P.2d 135, 137 (Okla.1955); *see also Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968). "If the

9

plaintiff has sustained no loss in addition to the loss to the corporation, the action cannot be maintained as an individual even though the wrongful acts were done with the specific intent of injuring the plaintiff." *Dobry*, 290 P.2d at 137 (citation omitted).

3.	Because any misappropriation of corporate funds by Clyde and Judith Patton could result only in "consequential injury to [Chuck James], either by depriving him of dividends which he might otherwise have received or by depressing the value of his stock," *Dobry*, 290 P.2d at 137, any claims premised thereon must be brought as part of a derivative action. In the present case, however, Chuck James has not asserted any derivative causes of action. Neither the original complaint nor the pretrial order specifically indicate that Chuck James intended to assert any derivative causes of action against Clyde and Judith Patton premised upon misappropriation of corporate funds. Moreover, in response to a question by the Court about whether Chuck James was asserting any derivative causes of action, counsel for Chuck James answered in the negative, instead stating that the case "really isn't [a derivative action]" and that "[t]here is no allegation of...failure to act on the part of the corporate officers to protect any of the rights of the corporation, although their should be." (Tr. Trans. at 13.) Finally, in his Closing Argument, Chuck James asserts that Clyde and Judith Patton breached their fiduciary duty toward Clyde Patton as shareholder of MDK by misappropriating corporate funds. (Pl.'s Closing Argument at 9, 11, 14.) As Chuck James cannot assert a direct claim for misappropriation of corporate funds against Clyde and Judith Patton, and has not asserted a derivative claim, Chuck James has not established a valid claim for breach of fiduciary duty against Clyde and Judith Patton.

**F.**	**Chuck James' Claim for Breach of Fiduciary Duty**

1. "It is well settled that directors of a corporation owe a fiduciary duty to the corporation and its stockholders under the common law." *Wilson v. Harlow*, 860 P.2d 793, 798 (Okla. 1993). Likewise, "a majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of the corporation, and the majority shareholder has the duty to protect the interests of the minority." *Renberg v. Zarrow*, 667 P.2d 465, 472 (Okla. 1983).

2. Insofar as Chuck James' claims for breach of fiduciary duty against Clyde and Judith Patton incorporate by reference his underlying claims for breach of contract, fraud, or misappropriation of corporate funds, his breach of fiduciary claims also fail for substantially the same reasons as the underlying claims.

3. Chuck James has failed to prove that Clyde Patton breached his fiduciary duty as director, president, or majority shareholder of MDK by terminating Chuck James without adequate investigation. Prior to his termination, Chuck James took personal responsibility for the missing Unimin equipment, rather than informing Clyde Patton that his brother had taken the items. Thus, to the extent that Clyde Patton, as President of MDK, actually had a duty to investigate prior to terminating Chuck James as an employee, Chuck James' own representations to Clyde Patton, even if untrue, gave adequate justification for his termination without additional investigation.

4. Even if Clyde or Judith Patton acted contrary to their duties as directors or officers of MDK in removing Chuck James as an officer of MDK without adequate notice, Chuck James has failed to establish that he was harmed as a result. Where directors act unlawfully and breach their fiduciary duty by holding a board meeting without giving proper

11

notice thereof, such illegality is immaterial and the rights of the affected parties are not offended where no doubt exists that a correctly noticed meeting would have reached the same result. *See Medlin v. Oklahoma Motor Hotel Corp.*, 545 P.2d 217, 222 (Okla. App. 1975) ("Form must yield to substance. The law will not require that which is useless."). Moreover, the uncontested facts reveal that a subsequent and properly-noticed special shareholder meeting ratified the Board of Director's previous decision to remove Chuck James as director and officer of MDK. Finally, Chuck James has identified no damages suffered as a result of his initial removal, whether from loss of compensation received for service as Vice-President and Director of MDK or otherwise. Accordingly, Chuck James is not entitled to any recovery as a result of this alleged breach of fiduciary duty by Clyde and Judith Patton.

> **G.     Defendants' Claim for Interference with Contract or Business Relations**

1.     "To recover in an action for malicious interference with contract or business relations a plaintiff must show: (1) [t]hat he or she had a business or contractual right that was interfered with; (2) that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable; and, (3) that damage was proximately sustained as a result of the interference." *Brown v. State Farm Fire and Cas. Co.*, 58 P.3d 217, 223 (Okla. App. 2002).

2.     Defendants have failed to prove that Chuck James interfered with MDK's contractual or business relationship with Unimin by stealing Unimin's equipment. The agreement between Unimin and MDK permitted Unimin to discontinue its business relationship at any time. (Tr. 288:12-288:25.) Moreover, following Chuck James' departure, MDK received additional work from Unimin. (Tr. 294:6-294:18.) Additionally, Defendants offered no

affirmative evidence establishing that Unimin ceased using MDK's services because of Chuck James' actions. Although both Clyde Patton and Darren Couch testified that it was their "understanding" that MDK was no longer welcome on Unimin sites because of Chuck James' actions, neither offered any evidence admissible on the issue of Unimin's reasons for ending its relationship with MDK. No Unimin employees were called to testify as to the company's reason for discontinuing its relationship with MDK., Clyde Patton admitted to having no way of knowing whether Unimin's decision not to submit additional work orders to MDK was the result of circumstances occurring after Chuck James' departure. (Tr. 289:1-289:4.) Finally, to the extent that the alleged theft of Unimin's equipment was the reason that Unimin subsequently ceased accepting bids or issuing work orders to MDK, the evidence establishes that Mike James, not Chuck James, removed the equipment from Unimin's site.

    **H.**    **Defendants' Claim for Breach of Fiduciary Duty**

    1.    As noted above, "[i]t is well settled that directors of a corporation owe a fiduciary duty to the corporation and its stockholders under the common law." *Wilson v. Harlow*, 860 P.2d 793, 798 (Okla. 1993).

    2.    Because Defendants' claim for breach of fiduciary duty against Chuck James is likewise premised upon Chuck James' alleged theft of Unimin equipment, and the corresponding loss of business resulting therefrom, Defendants' breach of fiduciary claim fails for substantially the same reasons as the underlying claim for interference with contract or business relations.

    **I.**    **Defendants' Claim for Attorney Fees**

    1.    "[A] prevailing party may not ordinarily recover attorney fees in the absence of a statute or specific contractual authority." *ABC Coating Co., Inc. v. J. Harris & Sons Ltd.*, 747

P.2d 271, 272 (Okla. 1987). Nevertheless, "where a stockholder is successful in a suit instituted in behalf of the corporation and [the corporation] is thereby enriched, the plaintiff who brought the action in a representative capacity is entitled to recover reasonable costs and expenses that include counsel fees." *Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846, 853 (Okla. 1987). Moreover, "the court ha[s] inherent equitable power to award attorney fees when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall v. Edge*, 782 P.2d 122, 129 (Okla. 1989).

2. Clyde and Judith Patton have failed to establish their entitlement to attorney fees and costs from Chuck James relating to this action. Clyde and Judith Patton did not institute this action on behalf of MDK as stockholders and have not enriched MDK. Moreover, insofar as Clyde and Judith Patton premise their claim for attorney fees on the same arguments underlying their claims for interference with contract or business relations and breach of fiduciary duty, Clyde and Judith Patton's attorney fee claims fail for substantially the same reasons as their other claims.

**J. Clyde and Judith Patton's Claim for Indemnification**

1. "A corporation shall have power to indemnify any person who was or is a party...to any threatened, pending or completed action, suit or proceeding...by reason of the fact that the person is or was a director, officer, employee, or agent of the corporation...including attorneys' fees, judgments, fines, and amounts paid in settlement actually and reasonably incurred by the person in connection with the action, suit, or proceeding...." Okla. Stat. tit. 18, § 1031(A).

2. "To the extent that a present or former director, or officer of a corporation has

been successful on the merits or otherwise in defense of any action, suit, or proceeding referred to in [Okla. Stat. tit. 18, § 1031(A)], or in defense of any claim, issue or matter therein, the person shall be indemnified against expenses, including attorneys' fees, actually and reasonably incurred by the person in connection therewith." Okla. Stat. tit. 18, § 1031(C).

3. Because they were sued in their capacity as directors or officers of MDK and have been successful in their defense of each of Chuck James' various claims against them, Clyde and Judith Patton are entitled to indemnification by MDK of all attorney fees and costs incurred as a result of this action. To the extent that MDK has not already indemnified or otherwise reimbursed Clyde and Judith Patton for their attorney fees resulting from this action, MDK is directed to do so.

IT IS SO ORDERED this 14th day of September 2007.

James H. Payne
United States District Judge
Eastern District of Oklahoma